COPY

1  HAYES F. MICHEL, Bar No. 141841
   BAKER & HOSTETLER LLP
2  12100 Wilshire Boulevard, 15th Floor
   Los Angeles, California 90025-7120
3  Telephone: 310.820.8800
   Facsimile: 310.820.8859
4  Email:      hmichel@bakerlaw.com

5  JOSEPH MICHAEL ESMONT, Ohio Bar No. 0084322
   *pro hac vice application to be filed*
6  BAKER & HOSTETLER LLP
   PNC Center
7  1900 East Ninth Street, Suite 3200
   Cleveland, Ohio 44114-3482
8  Telephone: 216.621.0200
   Facsimile: 216.696.0740
9  Email:      jesmont@bakerlaw.com

10 Attorneys for Plaintiff

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14 BRIAN A. BASH, Chapter 7 Trustee       Case No.
   for Fair Finance Company,
15                                          CV11  04999 DSF  (AGRx)
16                 Plaintiff               COMPLAINT TO AVOID
                                           FRAUDULENT TRANSFERS;
17                                          REQUEST FOR JURY TRIAL

   v.                                      1. Avoidance and Recovery of Actual
18                                             Fraudulent Transfers
   NATIONAL LAMPOON, INC.                  2. Avoidance – Constructive
19                                             Fraudulent Transfer
                 Defendant.                3. Recovery of Fraudulent Transfers
20                                             from a Subsequent Transferee
                                           4. Permanent Injunction
21

22

23

24

25

26

27

28

009900, 000010, 503580701.2                              COMPLAINT

# I.

# **PRELIMINARY STATEMENT**

"Historically, our principal sources of funds used for operations and working capital have been revenues and loans received from Daniel S. Laikin, our former Chief Executive Officer, and Timothy Durham, our current Chief Executive Officer."

*- National Lampoon's final quarterly report, filed on October 2nd, 2009*

1.    Timothy Durham and Daniel Laikin were officers or directors of both Fair Finance Company ("Fair") and National Lampoon, Inc. ("National Lampoon"). They made significant investments in, and loans to, National Lampoon using Fair's money.  Fair's books and records show that Durham's personal obligations to Fair exceed $60 million, and Laikin's personal obligations to Fair exceed $20 million.

2.    Durham and Rick Snow operated Fair as part of a Ponzi scheme that misappropriated hundreds of millions of dollars from the individuals who purchased Fair investment certificates (the "Investors.")  Durham and Snow were indicted by the Department of Justice and sued by the Securities and Exchange Commission on March 16, 2011 for their role in the fraud.

3.    Durham has served as a director of National Lampoon since 2002, and as its CEO since 2008. Snow is National Lampoon's CFO.  Daniel Laikin, National Lampoon's previous CEO, was a director of Fair Finance and is presently in prison for fraudulently manipulating the market for National Lampoon's shares.

4.    Durham and Laikin made a significant investment in National Lampoon in 2002, after which they both became directors of the company and Laikin became an executive.

5.    From the beginning of fiscal year 2002 until National Lampoon stopped filing reports with the Securities and Exchange Commission in 2009, National Lampoon lost in excess of $37 million, and its auditors issued qualified opinions questioning whether it could continue as a going concern every year.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6.    To help cover those losses, Durham fraudulently transferred at least $9 million of Fair's money to National Lampoon, and paid at least $1 million of Fair's money to entities that were, upon information and belief, creditors of National Lampoon.

7.    To disguise the origin of the transfers to National Lampoon, Durham typically funneled these funds through other entities, including Fair Holdings, Inc. ("FHI"), DC Investments, LLC ("DCI"), and Obsidian Enterprises ("Obsidian"). Many of the transfers were recorded as loans to Durham or Laikin.

8.    Durham was at all relevant times a significant shareholder and director or officer of National Lampoon.

## II.

## BANKRUPTCY CASE PROCEDURAL BACKGROUND

9.    On February 8, 2010 (the "Petition Date"), creditor-investors (the "Petitioning Creditors") filed an involuntary bankruptcy petition against Fair under Chapter 7 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") and is currently pending there Case No. 10-50494.   A true and correct copy of the involuntary bankruptcy petition is attached as Exhibit A.

10.    On the Petition Date, the Petitioning Creditors also filed an "Emergency Motion to Appoint Interim Trustee", a true and correct copy of which is attached as Exhibit B, alleging that a trustee was needed to oversee the operations of Fair because (i) Fair had failed to make timely payments on its debts, including failing to redeem matured certificates and failing to pay interest on unmatured certificates; (ii) Fair and several affiliated companies had been raided by the Federal Bureau of Investigation in November of 2009; (iii) Fair has not been open to the public since the raid; and (iv) public records revealed that Fair had made "unusually large" loans to insiders.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11.     On February 19, 2010, the Bankruptcy Court entered an order directing the United States Trustee to appoint an interim trustee.

12.     On February 24, 2010, Fair filed notice that it consented to the entry of an order for relief under Chapter 7 in the bankruptcy case, a true and correct copy of which is attached as Exhibit C.

13.     On March 2, 2010, the Bankruptcy Court entered an Order granting the relief sought by the Petitioning Creditors nunc pro tunc as of February 24, 2010, a true and correct copy of which is attached as Exhibit D.

14.     On March 2, 2010, the United States Trustee filed the Notice of Appointment of Interim Chapter 7 Trustee nunc pro tunc effective February 24, 2010, a true and correct copy of which is attached as Exhibit E.  Attorney Bash is the duly appointed, qualified and acting Trustee in the Bankruptcy Case.

## III.

## THE PARTIES

15.     National Lampoon is a Delaware corporation with its primary place of business in Los Angeles, California.

16.     Brian Bash is the Chapter 7 Trustee for Fair, an Ohio corporation.

17.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because there is a diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.  Venue is proper in this district because it is the district in which the wrongdoings that are the subject of this Complaint took place by Defendants.

## RELEVANT NON-PARTIES

18.     Durham is National Lampoon's CEO and a member of the board of directors. Durham was a director of Fair and its CEO.  Snow is or was National Lampoon's CFO. Snow was Fair's CFO. Laikin is or was National Lampoon's CEO and a member of the board of directors. Laikin was a director of Fair. Durham

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    and Laikin have held significant amounts of National Lampoon stock at least since

2    2002.

3        19.     Fair was purchased by FHI, an Ohio Corporation with its principal

4    place of business in Indianapolis, Indiana in January 2002.

5        20.     FHI's parent corporation is DCI, an Indiana limited liability company

6    with its principal place of business in Indianapolis, Indiana.  DCI is owned by

7    Durham and Cochran.

8                           **IV.**

9                        **FACTS**

10                  **<u>DURHAM'S FRAUD</u>**

11        21.     Fair historically funded its factoring business by issuing debt

12    instruments called "investment certificates" to Investors.  Durham used those

13    borrowed funds to make over $220 million dollars in related-party loans. Typically,

14    that money would first be lent to FHI, and might be routed through other entities,

15    including Durham, Laikin, DCI, Obsidian, or Diamond Investments, LLC

16    ("Diamond") before reaching its ultimate recipient.

17        22.     FHI and DCI had no significant business other than to borrow money

18    from Fair and lend it to others, and were insolvent or nearly so at all relevant times.

19    Obsidian was insolvent at all relevant times. None of the three entities had the

20    assets to make loans without taking the money from Fair.

21        23.     FHI, DCI, Obsidian and Durham were mere conduits for the loans of

22    Fair's money to National Lampoon. Therefore, this Complaint will generally refer

23    to the loans from Fair, FHI and DCI (collectively, the "Fair Entities") as being from

24    Fair.

25        24.     On March 16,  2011, the Department of Justice indicted Timothy

26    Durham and Rick Snow for conspiracy, securities fraud, and wire fraud in

27    connection with their operation of Fair.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

25.     On the same day, the Securities and Exchange Commission sued the same individuals for securities fraud.  The Trustee's investigation has revealed facts similar to those alleged in the Department of Justice indictment and the SEC complaint as set forth in the Trustee's Application to Appoint Jeffrey Golden As Receiver for National Lampoon, Inc., filed contemporaneously herewith.

26.     All three investigations have concluded that Durham, with Snow's assistance, operated Fair as, or in the nature of, a Ponzi scheme and looted Fair through insider loans to fund his lavish lifestyle and failing business empire. Durham has admitted in regulatory filings to owing Fair $13 million.

27.     Within days after purchasing Fair, Durham began using the Investors' money to fund his failing businesses and personal investments through purported loans on commercially unreasonable terms.

28.     Obsidian's financial statements for January 31, 2002 - approximately the same time Durham purchased Fair - reported that Obsidian was insolvent, having lost approximately $6 million in the thirteen months since it went public, and that it had a working capital deficit of approximately $9 million.

29.     Obsidian's auditors expressed significant concerns about the company at approximately the same time, issuing a qualified opinion expressing "substantial doubt" as to whether Obsidian could continue to operate as a going concern, noting that Obsidian had a heavy debt load of approximately $44 million, and stating that Obsidian was also in violation of a number of loan covenants.

30.     Within two days after FHI purchased Fair, FHI gave Obsidian an effectively unsecured $3 million line of credit. FHI had no significant source of income other than Fair. Obsidian and its subsidiaries owed Fair or its parent entities approximately $7.5 million by the end of the first year after FHI acquired Fair.

31.     Within fifteen months  after FHI purchased Fair, related parties owed Fair or its parent companies approximately $30 million, with the number growing to $40 million by the end of two years.

32.     The related-party loans were often on commercially unreasonable terms. For instance, even though the loans were almost universally risky – much of the money went to allow Durham to fund his lifestyle, speculate in the stock market or fund companies in financial distress – the loans were typically unsecured and permitted the borrower to defer principal payments, and sometimes interest, for as long as seven years. If the borrower could not repay the loan at maturity, the maturity date was routinely extended for years, often without requiring interim payments. Even if the borrower granted a lien in theory, the Fair Entities almost never perfected it, enabling the borrower to subsequently encumber the asset, thereby subordinating the Fair Entities to subsequently perfected liens.

33.     Durham also flatly misappropriated corporate assets for his own benefit. Fair's money paid for a fleet of luxury vehicles, a $250,000 renovation to Durham's garage, a yacht, shares in a private jet, and a number of mansions.  Since the Fair Entities did not file liens against Durham's property, Durham used many of those assets as collateral for additional loans from banks or other lenders.

34.     Durham sold a number of luxury vehicles out from under Fair's lien in order to pay legal fees for himself, his companies and some officers in those companies in 2010.

35.     Fair's financial condition was very delicate after FHI purchased the company in 2002. While Fair was a strong company under previous ownership, FHI purchased Fair through a leveraged buyout, which placed a significant debt burden on Fair. Fair's tangible assets after the leveraged buyout were smaller than its liabilities, rendering Fair immediately insolvent unless significant value is attributed to its goodwill, despite the manner and purposes for which it was operated.

36.     Even if Fair was solvent in the short term after the leveraged buyout, the failing related-party loans and Durham's looting quickly rendered the company insolvent. To maintain a façade of solvency, Durham and Snow overvalued the

1    related party loans, accrued fictitious income, engaged in sham transactions to

2    create the appearance that the related-party loans were performing, fired their

3    auditors twice and ultimately stopped being audited, moved underperforming assets

4    off-balance sheet, and refused to comply with accounting rules adopted in the wake

5    of the Enron fraud to prevent the use of off-balance sheet entities to create a

6    misleading accounting picture.

7        37.    If Fair's finances are accurately accounted for, Fair was insolvent,

8    conservatively, by at least $10 million dollars by the end of 2002 and by

9    approximately $50 million in 2005.

10       38.    The related-party loans were not actually performing, and Fair's

11   legitimate factoring business was not producing enough money to make payments

12   due to the Investors. Durham kept Fair alive by operating it as, or in the nature of, a

13   Ponzi scheme, by using funds from new Investors to pay amounts due to prior

14   Investors.

15                       **NATIONAL LAMPOON'S FAILING BUSINESS**

16       39.    According to National Lampoon's SEC filings, the company has had

17   one profitable year since 1999. National Lampoon has been operated despite a

18   string of qualified audit opinions questioning whether the company could continue

19   to operate as a going concern since 2001.

20       40.    In May 2002, Durham and Laikin purchased a significant interest in

21   National Lampoon and were elected directors of the company.

22       41.    At the time, National Lampoon was subject to a qualified audit opinion

23   questioning whether the company could continue to operate as a going concern,

24   and financial statements issued for July 31, 2002 showed that National Lampoon

25   had lost approximately $5 million over the prior five years.

26       42.    Between 2002 and National Lampoon's last publicly filed financial

27   statements in 2009, the company received qualified audit opinions questioning

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   whether National Lampoon could continue to operate as a going concern every

2   year, and the company lost approximately $37 million.

3       43.     The last financial statements filed in 2009 indicated that National

4   Lampoon was insolvent by more than three million dollars, had generated a net loss

5   of approximately $9 million over the prior two years and nine months, and its

6   current liabilities exceeded its current assets by $5.6 million.

7       44.     National Lampoon survived in large part because of money

8   misappropriated from Fair.

9       45.     National Lampoon admits that "[h]istorically, our principal sources of

10  funds used for operations and working capital have been revenues and loans

11  received from Daniel S. Laikin, . . . and Timothy Durham[.]"

12      46.     A significant portion of the funds that National Lampoon attributed to

13  receiving from Durham and Laikin were in fact received by Fair and transmitted

14  through DCI.

15      47.     Durham, Snow, and people under their control were in charge of

16  maintaining DCI's books and records.

17      48.     On July 2, 2002, just six months after FHI purchased Fair, Durham

18  caused DCI to transfer $500,000 of Fair's money to National Lampoon, and by the

19  end of 2003, that number had grown to $5.3 million.

20      49.     National Lampoon ultimately received at least $9.1 million of Fair's

21  money.

22      50.     In addition, upon information and belief, in excess of $1 million of

23  Fair's money was transferred to third parties on National Lampoon's behalf.

24      51.     These include the payment of in excess of $818,000 to allow Michael

25  Reardon, a creditor of National Lampoon, to purchase shares in National Lampoon,

26  $100,000 to National Lampoon director Paul Skjodt, $57,000 to fund expenses for

27  the movie "Jake's Booty Call," a monthly stipend to National Lampoon creditor

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Kato Kaelin, and the payment of National Lampoon expenses on an Obsidian credit

2    card.

### COUNT I

### AVOIDANCE AND RECOVERY OF ACTUAL FRAUDULENT
### TRANSFERS

**11 U.S.C. § 544, 11 U.S.C. § 550, 28 U.S.C. § 3304, 26 U.S.C. § 6502(a),**
**O.R.C. 1336.04, Ind. Code 32-18-2-14**

8    52.    The Trustee reincorporates the preceding paragraphs as if fully restated

9    herein.

10    53.    Fair transferred funds to FHI. FHI transferred those funds to DCI.

11    54.    FHI and DCI were mere conduits for transfers of funds from Fair to

12    National Lampoon.

13    55.    On the dates and in the amounts listed on Exhibit F, DCI transferred

14    the funds originating from Fair to National Lampoon, (the "Transfers") in the

15    aggregate amount of $9,114,523.69.

16    56.    Durham and Snow made the Transfers with actual intent to hinder,

17    delay, or defraud Fair's creditors.

18    57.    National Lampoon took the Transfers with actual or constructive

19    knowledge that the Transfers were made with funds from Fair, that the funds were

20    obtained by defrauding Fair's Investors.

21    58.    Creditors exist who would be entitled to avoid these transactions under

22    the Ohio and Indiana Uniform Fraudulent Transfer Acts.

23    59.    The Internal Revenue Service is a creditor of the estate. The Internal

24    Revenue Service would be entitled to avoid this transfer under the Federal Debt

25    Collection Procedures Act, and pursuant to the statute of limitations set forth in 26

26    U.S.C. § 6502(a).

27    60.    Fair is entitled to avoid the transfers as a creditor of DCI.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

61.   The Trustee is entitled to avoid such transfers and recover an amount to be determined at trial, but not less than $9,114,523.69 from National Lampoon.

## COUNT II

## AVOIDANCE – CONSTRUCTIVE FRAUDULENT TRANSFER

### 11 U.S.C. § 544, 28 U.S.C. § 3304, 26 U.S.C. § 6502(a), O.R.C. 1336.04, Ind. Code 32-18-2-14

62.   The Trustee reincorporates the preceding paragraphs as if fully restated herein.

63.   Fair transferred funds to FHI. FHI transferred those funds to DCI.

64.   FHI and DCI were mere conduits for transfers of funds from Fair to National Lampoon.

65.   On the dates and in the amounts listed on Exhibit F, DCI made the Transfers of Fair's funds to National Lampoon in the aggregate amount of $9,114,523.69.

66.   At the times the Transfers were made,  Fair, FHI, and DCI were insolvent or were rendered insolvent by the transfer.

67.   The Fair Entities engaged in a business of lending to related parties on commercially unreasonable terms, and at times when commercially reasonable lenders would not have lent at all.

68.   At the times the Transfers were made, the Fair Entities were engaged in, or were about to engage in, businesses or transactions for which their assets were unreasonably small in relation to the business or transaction.

69.   At the times the Transfers were made, the Fair Entities intended to incur, or believed or reasonably should have believed that they would incur debts beyond their ability to pay as the debts came due.

70.   FHI and DCI were mere conduits for transfers of money from Fair to National Lampoon.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

71.     The Fair Entities did not receive reasonably equivalent value in exchange for the Transfers. Only $779,071.87 was transferred back into the Fair Entities from National Lampoon.

72.     Creditors exist who would be entitled to avoid the Transfers under the Ohio or Indiana Uniform Fraudulent Transfer Acts.

73.     The Internal Revenue Service is a creditor of the estate. The Internal Revenue Service would be entitled to avoid this transfer under the Federal Debt Collection Procedures Act, and pursuant to the statute of limitations set forth in 26 U.S.C. § 6502(a).

74.     Fair is a creditor of DCI and is entitled to avoid the Transfers.

75.     The Trustee is entitled to avoid such Transfers and recover from National Lampoon an amount to be determined at trial, but no less than $8,335,451.82.

## COUNT III

## RECOVERY OF FRAUDULENT TRANSFERS FROM A SUBSEQUENT TRANSFEREE

### 11 U.S.C. § 550, O.R.C. 1336.08, Ind. Code 32-18-2-18

76.     The Trustee reincorporates the preceding paragraphs as if fully restated herein.

77.     Fair transferred funds to FHI. FHI transferred those funds to DCI. On the dates and in the amounts listed on Exhibit F, DCI made the Transfers to National Lampoon in the aggregate amount of $9,114,523.69.

78.     The Transfers were proceeds of the avoidable transfers from Fair and FHI.

79.     National Lampoon took the funds with knowledge that the underlying transfers from Fair and FHI were avoidable.

80.     National Lampoon did not provide reasonably equivalent value to DCI in exchange for the Transfers.

81.    The Trustee is entitled to recover the Transfers from National Lampoon in the amount of at least $9,114,523.69.

## COUNT IV

## PERMANENT INJUNCTION

82.    The Trustee reincorporates the preceding paragraphs as if fully restated herein.

83.    National Lampoon is unlikely to be able to satisfy its obligations to the Trustee in full.

84.    The Trustee will be irreparably harmed if funds are diverted from National Lampoon, as he may never be able to recover them.

85.    Durham and Snow have been indicted for securities and wire fraud involving the misappropriation of corporate assets. Laikin has been convicted of securities fraud and benefitted from the fraud of Durham and Snow.

86.    Durham and Snow have exhibited a pattern of misappropriating corporate assets for personal use, and have a significant motive to misappropriate those assets to fund their criminal defenses.

87.    A judgment at law would be inadequate to fully protect the Trustee against diversion of assets from National Lampoon.

88.    National Lampoon should be enjoined from (1) paying any dividends, (2) disposing of any assets outside the ordinary course of business without the court's prior approval after notice to the Trustee, and (3) distributing any funds to, or for the benefit of, insiders including but not limited to Timothy Durham, Rick Snow or Daniel Laikin pending the outcome of the Trustee's fraudulent transfer proceeding.

89.    The injunction will not prejudice National Lampoon because it will preserve corporate assets and because National Lampoon could seek court approval if it deems disposal of assets outside the ordinary course of business to be beneficial.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

90.     The insiders will not be prejudiced because they are not entitled to distributions ahead of creditors while National Lampoon is insolvent.

91.     The Trustee represents thousands of Investors in Fair. In excess of $9 million of those investors' savings were wasted by Durham, Snow, Laikin and others stripping Fair of its assets for the benefit of National Lampoon.

92.     Laikin, Durham, and Snow are not entitled to any payments from National Lampoon because they fraudulently diverted funds from the Fair Entities to National Lampoon and financially deteriorated National Lampoon.

WHEREFORE, the Trustee respectfully requests the entry of an order:

(a) Granting the Trustee judgment on his actual fraudulent transfer claim in an amount to be proven at trial, but no less than $9,114,523.69.

(b) Granting the Trustee judgment on his constructive fraudulent transfer claim in an amount to be proven at trial, but no less than $8,335,451.82.

(c) Granting the Trustee judgment on his subsequent transferee claim in an amount to be proven at trial, but no less than $9,114,523.69.

(d) Permanently enjoining National Lampoon from (1) paying any dividends, (2) disposing of any assets outside the ordinary course of business without the court's prior approval after notice to the Trustee, and (3) distributing any funds to, or for the benefit of, insiders including but not limited to Timothy Durham, Rick Snow or Daniel Laikin pending the outcome of the Trustee's fraudulent transfer proceeding.

(e) Granting such other and further relief as is appropriate under the circumstances.

Dated:   June 13, 2011

HAYES F. MICHEL
JOSEPH MICHAEL ESMONT
Baker & Hostetler LLP

HAYES F. MICHEL
JOSEPH MICHAEL ESMONT
Attorneys for Plaintiff

# REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Dated:   June 13, 2011

HAYES F. MICHEL
JOSEPH MICHAEL ESMONT
Baker & Hostetler LLP


HAYES F. MICHEL
JOSEPH MICHAEL ESMONT
Attorneys for Plaintiff

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

B 5 (Official Form 5) (12/07)

| UNITED STATES BANKRUPTCY COURT | |
|---|---|
| Norther District of Ohio | **INVOLUNTARY PETITION** |

| IN RE (Name of Debtor If Individual: Last, First, Middle) | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.) |
|---|---|
| Fair Finance Company d/b/a Fair Financial Services | Fair Holdings, Inc. DC Investments |

Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all)
34-0211930

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code) | MAILING ADDRESS OF DEBTOR (if different from street address) |
|---|---|
| 815 E. Market Street, Akron, OH 44305 | |

COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS
Summit County Ohio

ZIP CODE: 44305

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

✓ Chapter 7      Chapter 11

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

| Nature of Debts (Check one box.) | Type of Debtor (Form of Organization) | Nature of Business (Check one box.) |
|---|---|---|
| Petitioners believe: | ☐ Individual (Includes Joint Debtor) | Health Care Business |
| | ✓ Corporation (Includes LLC and LLP) | Single Asset Real Estate as defined in |
| ☐ Debts are primarily consumer debts | ☐ Partnership | Railroad |
| ✓ Debts are primarily business debts | ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below) | Stockbroker |
| | | Commodity Broker |
| | | Clearing Bank |
| | | ✓ Other |

| VENUE | FILING FEE (Check one box.) |
|---|---|
| ✓ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. | ✓ Full filing fee attached |
| ☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ☐ Petitioner is a child support creditor or its representative, and the box specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. [If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.] |

### PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

### ALLEGATIONS (Check applicable boxes)

COURT USE ONLY

1. ✓ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).
2. ✓ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a. ✓ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.



1050494100302000000000001

B 5 (Official Form  5) (12/07)    Page 2

Name of Debtor  Fair Finance Company

Case No._____

## TRANSFER OF CLAIM

Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| x _Nick Spada_ | x (signature) 2/6/10 |
|---|---|
| Signature of Petitioner or Representative (State title)   2-6-10 | Signature of Attorney                             Date |
| Nick Spada | Michael Moran/David Mucklow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
|  | 234 Portage Trail, Cuyahoga Falls, OH 44221 |
| Name & Mailing | Address |
| Address of Individual | (330) 929-0507 |
| Signing in Representative | Telephone No. |
| Capacity | |
| x _Robert P Ripley_ | x (signature) 2/6/10 |
| Signature of Petitioner or Representative (State title)   2-5-10 | Signature of Attorney                             Date |
| Robert Ripley | Michael Moran/David Mucklow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
|  | 234 Portage Trail, Cuyahoga Falls, OH 44221 |
| Name & Mailing | Address |
| Address of Individual | (330) 929-0507 |
| Signing in Representative | Telephone No. |
| Capacity | |
| x _Jacques Dunaway_ | x (signature) 2/6/10 |
| Signature of Petitioner or Representative (State title)   2-5-10 | Signature of Attorney                             Date |
| Jacques Dunaway | Michael Moran/David Mucklow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
|  | 234 Portage Trail, Cuyahoga Falls, OH 44221 |
| Name & Mailing | Address |
| Address of Individual | (330) 929-0507 |
| Signing in Representative | Telephone No. |
| Capacity | |

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Nick Spada, 4520 Cottage Grove, Uniontown, OH 44685 | Certificate holder | 7,63 ,08 |
| Jacques Dunaway, 3635 Avanti Lane, Uniontown, OH 44685 | Certificate holder | 9,191 |
| Robert Ripley, P.O. Box 94, Tallmadge, OH 44278 | Certificate holder | |

Note:    If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above.

Total Amount of Petitioners' Claims  161,038.39

continuation sheets attached

# EXHIBIT B

Docket #0002  Date Filed: 2/8/2010

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | : | Case No: |
| | : | |
| Fair Finance Company | : | Judge Marilyn Shea-Stonum |
| d/b/a Fair Financial Services | : | |
| | : | Chapter 7 |
| Debtor | : | |

### EMERGENCY MOTION TO APPOINT INTERIM TRUSTEE

Now come the Petitioning Creditors, Movant, by and through their attorneys, David

Mucklow and Michael Moran in support of this Emergency Motion to Appoint Interim

Trustee and state as follows:

### FACTUAL MATTERS

1.      David Mucklow and Michael Moran represent approximately one hundred unsecured

creditors holding investment certificates or notes with Fair Finance Company doing business

as Fair Financial Services exceeding six million dollars ($6,000,000) in total value of which

1.5 million dollars ($1,500,000) has matured and over one hundred thousand dollars

($100,000) in interest is currently due and owing.

2.      During November, 2009, the Federal Bureau of Investigation (FBI) entered the

premises of Fair Finance Company and other affiliated companies and seized computers and

records causing Fair Finance Company to close its doors to the general public.

3.      Although Fair Finance Company's website is accessible on the internet, its telephone

numbers have two basic messages as of February 7, 2010 for investors at (800) 735-3247:

"Due to recent events we have been closed since Thanksgiving holiday.  We've received and

reinstalled out computer operating systems and are in the process of making them fully



functional.  Further, we are anxiously awaiting return of our documents that were removed

from our facility.  Currently we are not issuing new certificates."  At (800) 228-8009: "Our

offices are closed.  If you have a question regarding your 1099 for 2009 please leave a

message and we will get back to you."  The offices of Fair Finance Company are not open to

the general public and only messages can be left.

4.      Although it is not currently possible to ascertain the total number of investment

certificate holders, it is believed Movant represents less than five percent of the value of

outstanding certificate holders and that the total value of outstanding certificates is in the

hundreds of millions.

5.      Fair Finance Company had been in operation since 1934 and was purchased by two

Indiana businessmen in 2002, Mr. James Cochran and Mr. Timothy Durham utilizing a newly

organized entity, Fair Holdings, LLC to serve as the sole shareholder of Fair Finance

Company.  It operated approximately eight locations in Northeast Ohio and is headquartered

at 815 E. Market Street, Akron, Ohio 44305.   All investors were required to be Ohio

residents.

6.      Pursuant to its recent circulars and other public records, Fair Finance Company's

certificate holder's or investor's funds flowed from the Debtor to Fair Holdings LLC, an Ohio

Company, and DC Investments, LLC, an Indiana Company and then from these companies

approximately one hundred and seventy six million dollars ($176,000,000) in funds were lent

to Mr. Cochran and Mr. Durham, personally, to companies that they either controlled or were

part owners or directors (insider loans), and to other companies (non-consumer loans) and

used to fund consumer loans (consumer loans) for a total of two hundred and twenty million

dollars ($220,000,000) in total loan receivables, inclusive of the insider loans.   An unaudited

consolidated balance sheet dated September 30, 2009 is attached as Exhibit 1 and made a part

hereof.  An unaudited consolidated balance sheet and income statement for Fair Finance Inc.

and subsidiary is attached as Exhibit 2 and made a part hereof.  Exhibit 1 and 2 are public

records filed with the Ohio Division of Securities.  Records indicate that Mr. Durham was

director of all three major entities.  As many as fifty insider companies may be involved, and

loans were made throughout the United States and Canada from Fair Finance Company

investor's funds.  There were no insider loans prior to 2002 according to public records.

7.      On October 30, 2009, Fair Finance Company registered to circulate an additional two

hundred and fifty million dollars ($250,000,000) in investment certificates.

8       The Ohio Division of Securities under the Ohio Department of Commerce responded

to the offering of October 30, 2009 with a seven page registration letter dated December 3,

2009, a copy of which is attached as Exhibit 3 and made a part hereof.   The Division

requested it receive certain financial documentation by December 11, 2009, including current

audited consolidated financial statements of the entities through September 30, 2009 and

current audited financial statements for obligors owing significant debt to Fair Finance

Company and Fair Holdings, LLC.   On December 11, 2009, Fair Finance Company through

counsel responded that it could not respond to the Ohio Division of Securities due to the

FBI's seizure of documentation and requested an extension of time.  Subsequently, the

offering was withdrawn from consideration.

<u>LEGAL ISSUES</u>

9.      Section 303 of the United States Bankruptcy Code authorizes an involuntary

bankruptcy case to be filed by three or more entities, each of which is either a holder of a

claim against such person that is not contingent as to liability or the subject of a bona fide

dispute as to liability or amount, if such noncontingent, undisputed claims aggregate at least $13,475. Petitioning creditors or Movant hold matured certificates exceeding that amount.

10.     Demand on said notes is hereby made as it is currently impossible to redeem any certificates.

11.     Pursuant to Section 303(g) after commencement of the case, upon request of a party in interest and after notice and a hearing: "if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor."

12.     The debtor has not reopened its doors to the general public since seizure of its records by the FBI during November, 2009.  Meanwhile, millions of dollars in certificates have matured and significant amounts of interest have not been paid to investors.  Many of the certificate holders depended upon the interest to live and pay bills.  Many certificate holders invested all of their savings, and many, if not most, are senior citizens.  One of the petitioners attempted to redeem $100,000 in certificates prior to the closing of Fair Finance Company and was refused by management to redeem and had been allowed to invest in excess of the limitations reflected in circulars.   Public records reflect that unusually large amounts of investor's funds were used for insider loans, including personal loans to Mr. Durham and Mr. Cochran.  In light of recent events, neither the Debtor nor its owners can be trusted to run the business of the Debtor, and the situation requires the appointment of an interim trustee to take possession of property and to operate the business of the debtor in order to protect and preserve the assets of the Debtor for the benefit of creditors.

WHEREFORE, Movant prays for an order appointing an order directing the United

States Trustee to appoint an interim trustee.

/s/David Mucklow                        /s/Michael Moran

(#0072875)                              (#0018869)
David Mucklow                           Michael Moran
1606 E. Turkeyfoot Lake Rd.             234 Portage Trail
Akron, OH 44312                         Cuyahoga Falls, OH 44222
(330) 896-8190                          (330) 929-0507
(330) 896-8201                          (330) 929-
davidamucklow@yahoo.com                 moranecf@yahoo.com


## CERTIFICATE OF SERVICE

I certify on this 8th day of February, 2009 a true and correct copy of the foregoing was served electronically to the following:

U.S. Trustee, electronically

## Deposited into U.S. Mail on 8th day of February, 2009

KEITH E. SCHAFFTER, S.A.
815 East Market Street
Akron, OH 44305

KEITH E. SCHAFFTER, S.A.
618 Sally Circle
Wadsworth, OH 44281

Fair Holdings Inc.
c/o Joseph Hennigin, S.A.
123 Hunt Club Dr., 1A
Copley, OH 44321

DC Investments, LLC
111 Monument Circle
Suite 4800
Indianapolis, IN 46204

Timothy S. Durham
14353 E. 113th Street
Fortville, IN 46040

James F. Cochran
13483 Marjac Way
McCordsville, IN 46055

By hand delivery to be attempted on the 8th day of February, 2009
Keith E. Schaffter

/s/David A. Mucklow
David A. Mucklow (#0072875)

# EXHIBIT C

Docket #0035  Date Filed: 2/24/2010

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Case No. 10-50494 |
|  | ) |
| FAIR FINANCE COMPANY d/b/a FAIR | ) Chapter 7 |
| FINANCIAL SERVICES, | ) |
|  | ) Judge Marilyn Shea-Stonum |
| Debtor. | ) |

## CONSENT TO ENTRY OF ORDER FOR RELIEF

Fair Finance Company, the putative debtor herein, by counsel, hereby consents to the

entry of an order for relief in the above-captioned chapter 7 bankruptcy case.

Respectfully submitted,

*/s/Kimberlie L. Huff*
Fair Finance Company
By One of Its Counsel

Bruce J.L. Lowe (0010918)
(blowe@taftlaw.com)
Kimberlie L. Huff (0072988)
(khuff@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Tel: (216) 241-2838
Fax: (216) 241-3707

F. Anthony Paganelli (Admitted *Pro Hac Vice*)
(paganelli@taftlaw.com)
Michael P. O'Neil (Admitted *Pro Hac Vice*)
(o'neil@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel: (317) 713-3500
Fax: (317) 713-3699

71281638.1



1050494100302000000000035

## <u>CERTIFICATE OF SERVICE</u>

I certify on this 24th day of February, 2010, a true and correct copy of the foregoing was served upon the following:

<u>Electronically</u>:

US Trustees

David Mucklow at davidamucklow@yahoo.com

Michael Moran at moranecf@yahoo.com


<u>Deposited into U.S. Mail on February 24, 2010</u>:

Keith E. Schaffter, S.A.
815 East Market Street
Akron, OH 44305

Keith E. Schaffter, S.A.
618 Sally Circle
Wadsworth, OH 44281

DC Investments, LLC
111 Monument Circle, Suite 4800
Indianapolis, IN 46204

Timothy S. Durham
14353 E. 113th Street
Fortville, IN 46040

James F. Cochran
13483 Marjac Way
McCordsville, IN 46055

<u>/s/Kimberlie L. Huff</u>
Kimberlie L. Huff
TAFT STETTINIUS & HOLLISTER LLP

71281638.1

10-50494-mss      Doc 35      FILED 02/24/10      ENTERED 02/24/10 12:17:11      Page 2 of 2

# EXHIBIT D

Docket #0041  Date Filed: 3/2/2010

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-50494 |
| | ) | |
| | ) | CHAPTER 7 |
| FAIR FINANCE COMPANY | ) | |
| | ) | JUDGE: MARILYN SHEA-STONUM |
| | ) | |

## NOTICE OF APPOINTMENT OF INTERIM CHAPTER 7 TRUSTEE

Daniel M. McDermott, United States Trustee, has appointed Brian Bash to serve as interim Chapter 7 trustee in the above-captioned case.  The debtor consented to the entry of an order for relief on February 24, 2010.  The court then entered an order on March 2, 2010 granting the relief sought by the petitioning creditors *nunc pro tunc* effective February 24, 2010.

Mr. Bash's appointment shall be effective as of February 24, 2010.


DANIEL McDERMOTT
UNITED STATES TRUSTEE REGION 9

By: /s/ Sherri L. Thompson_____
    Sherri L. Thompson
    Legal Clerk


March 2, 2010_____
Dated

1050494100303000000000001

# EXHIBIT E

**IT IS SO ORDERED.**

**Dated:  10:38 AM March 02 2010**

*Marilyn Shea-Stonum*
MARILYN SHEA-STONUM *PH*
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10 - 50494 |
| | ) | |
| Fair Finance Company, | ) | CHAPTER 7 |
| | ) | |
| DEBTOR. | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| | ) | **ORDER CLARIFYING DOCKET** |
| | ) | **ENTRY #35** |

In order to clarify the docket in the above-captioned case, the Court enters this order

granting the relief sought by the petitioning creditors *nunc pro tunc*, effective as of the date that

the Debtor filed its "Consent to Entry of Order for Relief" [docket #35, filed February 24, 2010].

### ###

cc: (*via* ECF):

Brian Bash
Kimberlie Huff
Lenore Kleinman
Trish Lazich
Michael Moran
David Mucklow



Michael O'Neil
Anthony Paganelli

-2-

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV11- 4999 DSF (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL

Hayes F. Michel, SBN 141841
BAKER & HOSTETLER LLP
12100 Wilshire Blvd., 15th Fl.
Los Angeles, CA 90025
Tel: (310) 820-8800
Fax: (310) 820-8859
Email: HMichel@Bakerlaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN A. BASH, Chapter 7 Trustee for Fair Finance Company,<br><br>PLAINTIFF(S)<br><br>v.<br><br>NATIONAL LAMPOON, INC.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11 04999** DSF (AGRx)<br><br><br>**SUMMONS** |

TO:DEFENDANT(S): <u>NATIONAL LAMPOON, INC.</u>

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Hayes F. Michel</u>, whose address is <u>BAKER & HOSTETLER LLP, 12100 Wilshire Blvd., Los Angeles, CA 90025 (Tel: (310) 820-8800</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 1 3 2011 _____

By: **CHRISTOPHER POWERS**
_____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              SUMMONS

American LegalNet, Inc.
www.USCourtForms.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**COPY**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BRIAN A. BASH, Chapter 7 Trustee for Fair Finance Company

**DEFENDANTS**
NATIONAL LAMPOON, INC.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Hayes F. Michel, SBN 141841
BAKER & HOSTETLER LLP
12100 Wilshire Blvd., 15ᵗʰ FL
Los Angeles, CA 90025
Tel: (310) 82-88800 / Fax: (310) 820-8859

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Avoidance and Recovery of Actual Fraudulent Transfers, Avoidance-Constructive Fraudulent Transfer, Recovery of Fraudulent Transfers from a Subsequent Transferee, Permanent Injunction

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 22 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities – Employment
☐ 446 American with Disabilities – Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 61 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**CV11   04999**

**FOR OFFICE USE ONLY:   Case Number:**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Cuyahoga, Ohio | |

(b)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA | |

(c)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
        **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

| X. SIGNATURE OF ATTORNEY (OR PRO PER): | *Hayes F. Michel* | Date | June 13, 2011 |
|---|---|---|---|
| | Hayes F. Michel, Esq., BAKER & HOSTETLER LLP | | |

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com

Key to Statistical codes relating to Social Security Cases

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com